**Paul JORDAN, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 40A04–9703–CR–90.

Court of Appeals of Indiana.

Feb. 11, 1998.

Mark J. Dove, Rogers & Dove, North Vernon, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, Gregory J. Ullrich, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

NAJAM, Judge.

## STATEMENT OF THE CASE

Following a jury trial, Paul Jordan was convicted of Inducing Votes by Gift or Offer to Compensate, a Class D felony. He was sentenced to an executed term of one and one-half years, with all but thirty days suspended. Jordan now appeals.

We affirm.

## ISSUES

Jordan presents several issues for our review which we consolidate and restate as:

1. Whether there was sufficient evidence to support Jordan's conviction.

2. Whether the trial court abused its discretion in refusing to compel Jordan's requested discovery.

## FACTS

On October 9, 1995, Candice Huber attended a voter registration party at the Silver Dollar Bar in North Vernon. Jordan and his son, Tony, also attended the party. Tony was a candidate in the North Vernon city election. During the party, Jordan requested that Huber complete a voter registration form and apply for an absentee ballot since she was scheduled to work on election day. Jordan told Huber to contact him after she received the absentee ballot and that he would then come to her house, pick it up, take it to the polls and pay her $10.00. Concerned about voting fraud, Huber contacted the Indiana State Police and related her conversation with Jordan.

On October 25, 1995, Huber called Jordan at the Silver Dollar Bar. State Trooper Thomas McCord was present at Huber's house and recorded the phone conversation between Jordan and Huber. Jordan told Huber that he would come over with an absentee ballot for her to complete and that he would then mail it. Jordan arrived at Huber's home a few minutes later and gave her $10.00. However, he did not have the ballot with him at that time. Huber gave McCord the money after Jordan had left.

Shortly thereafter, Jordan returned with the absentee ballot, which Huber then completed as he watched. McCord listened from another room while Jordan told her that it was good that she was voting for some Republicans and some Democrats because it would "look better that way." Huber then returned the completed ballot to Jordan and asked him whether he was interested in making the same arrangement with other people. He said that he was as long as they were residents of North Vernon and registered voters. Huber assured him that they were, and Jordan responded that he and Tony would provide absentee ballots to them the following day.

## DISCUSSION AND DECISION

### Issue One: Sufficiency of the Evidence

 When reviewing a claim of insufficient evidence, we neither reweigh the evidence nor judge the credibility of witnesses. *Hendricks v. State*, 649 N.E.2d 1050, 1052 (Ind.Ct.App.1995). We consider only the evidence favorable to the verdict and all the reasonable inferences drawn therefrom. *Hurt v. State*, 553 N.E.2d 1243, 1248 (Ind.Ct. App.1990). Where there is substantial evidence of probative value to support the verdict, it will not be disturbed. *Id.*

 Initially, we note that Jordan also argues that the trial court abused its discretion when it denied his motion for directed verdict. However, because Jordan presented evidence after the trial court denied his motion for directed verdict, he has waived consideration of that issue on appeal. *See Guy v. State*, 678 N.E.2d 1130, 1134 (Ind.Ct.App. 1997). Nevertheless, we conclude that because there was sufficient evidence to sustain his conviction, the trial court did not err when it denied Jordan's motion. *See id.* (if evidence is sufficient to sustain conviction, then trial court's denial of directed verdict motion cannot be error).

Jordan insists that the evidence presented by the State is insufficient to establish that he had induced or procured a vote for or against a candidate by an offer to compensate. Rather, he insists that the evidence merely proves that he offered money to cast an absentee ballot, an act not in violation of statute. We disagree with Jordan's argument.

Inducing Votes by Gifts or Offers to Compensate is defined at Indiana Code § 3–14–3–19 as:

A person who, for the purposes of inducing or procuring another person to vote or refrain from voting for or against a candidate or for or against a public question at an election or political convention, gives, offers or promises to any person any mon-

ey or other property commits a Class D felony.

Here, the evidence shows that Jordan had several conversations with Huber in which he intimated that she would receive $10.00 if she cast a vote for Tony. At trial, Huber testified that she could not remember Jordan's exact words to her, or whether he actually asked her specifically to vote for Tony, and that Jordan never explicitly told her that receipt of the $10.00 was conditioned on voting for Tony. However, Huber's testimony and the circumstances surrounding the transaction support a reasonable inference by the jury that Jordan intended to induce Huber's vote with money and that the payment was a quid pro quo for her vote. Thus, we conclude that the State presented sufficient evidence to sustain Jordan's conviction.

### Issue Two: Prosecutors' Compelled Testimony

Jordan also argues that the trial court abused its discretion when it refused to compel the testimony of the prosecuting attorneys, Gary Smith and Alan Marshall.

During the course of discovery, Jordan found a supplemental case report submitted by Indiana State Trooper Thomas E. McCord which allegedly demonstrates prosecutorial misconduct in this case. Jordan alleges that the prosecuting attorneys filed charges, although the Indiana State Police considered the investigation to be incomplete, and that his prosecution was part of a "political conspiracy." To prove a conspiracy, Jordan wished to call Marshall and Smith to testify at trial. The trial court denied his motion.

Ordinarily, counsel is not subject to being called as a witness. *Matheney v. State*, 583 N.E.2d 1202, 1206 (Ind.1992), *cert. denied*, 504 U.S. 962, 112 S.Ct. 2320, 119 L.Ed.2d 238 (1992). There are exceptions, however, such as when counsel is believed to have material information that cannot be disclosed otherwise. *Id.* Where the evidence is easily available from other sources and absent extraordinary circumstances or compelling reasons, an attorney who participates in a case should not be called as a witness. *Id.*

Generally, a prosecuting attorney cannot be called as a defense witness unless the testimony sought is required by a compelling and legitimate need. *Id.* If the prosecutor does not have information vital to the case, the trial court may appropriately exercise its discretion in denying the defendant's request to examine the prosecuting attorney. *Id.*

Jordan has failed to demonstrate a legitimate and compelling need for the prosecuting attorneys' testimony. Trooper McCord testified at trial, and Jordan cross-examined him about the alleged conspiracy and about the supplemental report.[1] Because McCord's report formed the basis of Jordan's conspiracy defense, and because McCord testified about it, we hold that the trial court did not abuse its discretion when it declined to compel the prosecutors' testimony. The jury heard evidence offered by Jordan that the prosecution was politically motivated. Although politics may have played a part in the decision to prosecute, that alone does not render the outcome of the trial unreliable. The State's evidence of Jordan's conduct is sufficient to sustain his conviction, regardless of any political considerations that may have encouraged the prosecution.

Affirmed.

BAKER and RILEY, JJ., concur.

---

1. The supplemental report was subject to an order in limine requiring that it be submitted to the court before being offered into evidence. Although the report was marked for identification and discussed at trial, it was not offered or admitted.