LEX, INC., an Indiana Corporation aka Paragon Mobile Home Park and Brian Farr and Shay Hoskins, Appellants–Plaintiffs/Counter–Defendants,

v.

THE BOARD OF TRUSTEES OF THE TOWN OF PARAGON, Indiana, Appellee–Defendant/Counter–Plaintiff.

No. 55A05–0308–CV–414.

Court of Appeals of Indiana.

May 5, 2004.

Transfer Denied Aug. 26, 2004.

Jack Rogers, Rogers & Gesse, Franklin, IN, Attorney for Appellants.

Richard D. Bray, Martinsville, IN, Attorney for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellants–Plaintiffs/Counter–Defendants, Lex, Inc., an Indiana Corporation aka Paragon Mobile Home Park and Brian Farr (Farr), and Shay Hoskins (Hoskins), (collectively, Lex), appeal the trial court's order denying its Permanent Injunction against Appellee–Defendant/Counter–Plaintiff, The Board of Trustees of the Town of Paragon, Indiana, (the Board), enforcing the Board's Ordinance 2002–8 (the Ordinance), that prohibits the issuance of the initial license for a mobile home more than 5 years old for placement within the Board's town limits.

We affirm.

## ISSUES

Lex raises one issue on appeal, which we restate as the following two issues:

1. Whether the trial court erred in denying its Complaint for permanent injunction because the Ordinance constitutes an ultra vires act; and

2. Whether the trial court erred in denying its Complaint for permanent injunction because the Ordinance violates the Equal Privileges Clause of the Indiana Constitution.

## FACTS AND PROCEDURAL HISTORY

Lex owns and operates a mobile home park within the Town of Paragon, Morgan County, Indiana, under an Indiana Department of Health license. Farr and Hoskins own a 1990 Fairmount Mobile Home and transported it to Lot # 21 of Lex's mobile home park. The Town of Paragon has an ordinance regulating mobile homes that has been in effect since 1972, and which was amended in 1974 and 2002 to create the present ordinance. The ordinance requires all persons moving mobile homes into the town of Paragon to have a license issued by the Board. Thus, Lex requested a license for Farr and Hoskins to occupy the 1990 Fairmount mobile home in its mobile home park. However, the ordinance specifically provides in a separate paragraph that mobile homes that are five years of age or older are restricted from being moved into the town for occupancy. As a result, the Board voted against approving the requested license for Farr and Hoskins because the Mobile Home was at least five years old at the time the application for the license was submitted.

On August 15, 2002, Lex filed its Complaint against the Board claiming that the Ordinance is an ultra vires act in that it: 1) violates Article 1, Section 23 of the Indiana Constitution; 2) violates the dictates of Ind.Code § 36–7–4–100 et seq. for zoning and planning procedures by local governments; 3) violates the police powers granted to local government by the Indiana Constitution; and 4) violates Article 1, Section 21 of the Indiana Constitution. In its Complaint, Lex argued that it was entitled to immediate injunctive relief by way of an Ind. Trial Rule 65(A)(i), preliminary injunction, and Ind. Trial Rule 65(F), permanent injunction, which would enjoin the Board from denying Lex the right to park the Mobile Home in Lex's mobile home park.

On September 9, 2002, the Board filed its Answer to Lex's Complaint. Additionally, the Board filed its Cross–Complaint against Lex contending that Lex violated the Ordinance by permitting Farr and Hoskins to move the 1990 Fairmount Mobile Home and park in the Town of Paragon. In its Cross–Complaint, the Board asked the trial court to grant them an injunction ordering Lex to remove the mobile home from the Town of Paragon. On September 17, 2002, Lex filed its Answer to Defendant's Counter Claim.

On October 22, 2002, a hearing was held. At the hearing, the trial court received evidence from both parties. On March 4, 2003, the trial court issued its Order Denying Preliminary Injunction to Lex. On July 15, 2003, a bench trial was held. At the conclusion of trial, the trial court took the matter under advisement. On July 25, 2003, the trial court denied Lex's Complaint for permanent injunction and issued the following findings of facts and conclusions of law, which state, in pertinent part:

### FINDINGS OF FACT

1. Paragon is an incorporated town, governed by a Board of Trustees and administered by a Town Clerk, with an estimated population of 661;

2. Lex [ ] is an Indiana Corporation in good standing and owner/operator of the Paragon Mobile Home Park, which was established within the town limits of Paragon sometime after the February 17, 1989 approval of the Trustees of the Town of Paragon [ ];

3. At the time of the preliminary injunction hearing on October 22, 2002 [ ] Farr and [ ] Hoskins lived together with [ ] Hoskins' children and were the owners of a 1990 Fairmount Mobile Home currently placed on lot # 21 in the Paragon Mobile Home Park;

4. Paragon does not have a comprehensive plan for zoning and planning, has no building inspector, planning director, zoning ordinance or a building code;

5. The Board [ ] have passed three separate ordinances concerning mobile homes in 1972 [ ], 1974 [ ] and 2002[ ];

6. Section 15 of Ordinance 1972–10 states: "This ordinance shall not apply to mobile homes parked or occupied within the corporate limits of the Town of Paragon where the area upon which the same are located has been duly zone[d] [ ] as a mobile home area by the Morgan County Plan Commission, or by the Town of Paragon." [ ]

7. [The Ordinance] was passed by the [Board] on June 6, 2002 and effective the same date. [ ].

8. The preamble of [The Ordinance] provides: "WHEREAS, it is in the best interest of the citizens of the Town of Paragon to control the use, placement and occupancy of mobile homes in the Town of Paragon, and, WHEREAS, the rules and restrictions are necessary for placement of such mobile homes, and, WHEREAS, it is necessary that there be certain rules and restrictions to insure that said mobile homes are connected and properly used between municipal utilities and to insure attractive and sanitary use of such mobile homes, and, WHEREAS, previous ordinances dealing with mobile homes are no longer current and it is necessary that they be updated...." [ ].

9. [The Ordinance] requires all mobile homes to be licensed by the Town of Paragon through its Clerk, requires the Clerk to provide applications for a mobile home license after a fee of $50.00 is paid to the Clerk, and expressly reserves the right to issue the license to the Town of Paragon. Mrs. Zoller testified that this ordinance was a revenue builder for the Town because trailers are not taxed in the same manner as houses but was also for "the betterment of Paragon." Persons who apply for trailer permits for trailers newer than five (5) years must submit a title [of] the manufactured home for proof of age and photographs of its' condition. The Town Board examines the photographs and many times Zoller has authority to issue permits for brand new manufactured homes/trailers without the Town Counsel having to review the permit. [ ].

10. Section 3D of [The Ordinance] provides: "That no permit shall be issued for a mobile home which is more than five (5) years of age at the time of the application of the initial permit." [ ].

11. Section 8 of [The Ordinance] provides: "That all ordinances shall

apply to any mobile homes parked or occupied within the Town of Paragon and the provision shall be the same, except as specifically set forth herein, [sic] placement in mobile home park." [ ].

12. Section 14 of [The Ordinance] provides: "That all ordinances in conflict with this ordinance, shall be and the same are hereby repealed." [ ].

13. In June 2002, the mobile home belonging to [ ] Hoskins was placed in the Paragon Mobile Home Park, after the passage of [The Ordinance] and prior to the application for a mobile home license through the Clerk of Paragon.

14. [Lex] permitted the placement of the Hoskins mobile home after having knowledge of the [Ordinance], knowing the mobile home was older than permitted by the Ordinance and after informally asking permission of the Town Board President to place the trailer and being informally told it would not be permitted.

15. [ ] Hoskins applied for a Paragon mobile home permit on July 7, 2002 knowing that the trailer exceeded the age limit imposed by Paragon through [The Ordinance].

16. The [Board] unanimously denied the permit to Hoskins at their August 5, 2002 meeting because the trailer was over five (5) years old. [ ].

17. The [Board] had previously denied mobile home permits for mobile homes due to the age of the mobile home, i.e. over five (5) years old.

18. Hoskins' mobile home is in good condition and appeared similar to the other mobile homes in Lex's mobile home park.

19. The [Board] makes no distinction in how permits are handled for manufactured homes to be placed in a mobile home park and those to be placed on private lots in the town of Paragon.

20. Article I, Section 23 of the Indiana Constitution provides: "The General Assembly shall not grant to any citizen, or any class of citizens, privileges and immunities, which, upon the same terms, shall not equally belong to all citizens."

CONCLUSIONS OF LAW

1. All Findings of Fact which can be construed as Conclusions of Law are to be considered both.

2. That the [Board] has the authority to pass municipal ordinances pursuant to the "Home Rule" statutes, Indiana Code [section] 36-1-3 et. Seq., and may plan for and regulate the use of structures, improvements and real properly within the town borders. See I.C. [§] 36-7-2-2.

3. That by definition mobile homes are "mobile" but do not create a class of persons or property which are necessarily or always "transient."

4. That [The Ordinance] has been uniformly enforced and the [Board] has not discriminated against [ ] Hoskins, and other member[s] of her family unit, or Lex [ ].

5. That [The Ordinance] is reasonably related to the governmental interest stated in the Preamble to the [O]rdinance.

6. The analysis required for examination of an Article I, Section 23 claim is a single standard consisting of two requirements. "First, the disparate treatment accorded by the legislation must be reasonably related to inherent characteristics which distinguish

the unequally treated classes. Second, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated." *Dvorak v. Bloomington,* 702 N.E.2d 1121, 1124 [ (Ind.Ct.App. 1998) ] citing *Collins v. Day,* 644 N.E.2d 72 (Ind.1994).

7. The [c]ourt finds, as a matter of law, that [The Ordinance] does not violate Article I, Section 23 of the Indiana Constitution and that the Ordinance has been uniformly enforced.

THEREFORE, [Lex's] [C]omplaint for permanent injunction is denied.

(Appellant's App. Tab No. 2).

Lex now appeals. Additional facts will be supplied as necessary.

## DISCUSSION

### I. *Standard of Review*

■ Lex argues that the trial court erred in denying its Complaint for permanent injunction against the Board. A prohibitory injunction is an extraordinary equitable remedy, which should be granted with caution. *Schlehuser v. City of Seymour,* 674 N.E.2d 1009, 1012 (Ind.Ct.App. 1996); *Gaskin v. Beier,* 622 N.E.2d 524, 527 (Ind.Ct.App.1993), *trans. denied.* The burden is on the plaintiff seeking the injunction to demonstrate that certain and irreparable injury would result if the injunction were denied. *Id.* The grant or denial of an injunction is within the discretion of the trial court and will not be overturned unless it is arbitrary or amounts to an abuse of discretion. *Id.*

### II. *Ultra Vires Act*

■ First, Lex claims that Paragon Ordinance 2002–8 (the Ordinance) is void because it constitutes an ultra vires act by the Board. Whether the Ordinance is ultra vires depends upon the interpretation of the enabling statute, which grants local governments the power to enact land use ordinances. When interpreting a statute, the foremost objective is to determine and effect legislative intent. *Dvorak v. City of Bloomington,* 702 N.E.2d 1121, 1123 (Ind. Ct.App.1998); *JKB, Sr. v. Armour Pharmaceutical Co.,* 660 N.E.2d 602, 605 (Ind. Ct.App.1996), *trans. denied.* Statutes must be construed to give effect to legislative intent, and courts must give deference to such intent whenever possible. *Id.* Thus, courts must consider the goals of the statute and the reasons and policy underlying the statute's enactment. *Id.* Courts are to examine and interpret a statute as a whole, giving words their common and ordinary meaning, and not overemphasize a strict, literal, or selective reading of individual words. *Id.* Words and phrases are taken in their plain, ordinary, and usual meaning unless a different purpose is manifested by the statute. *Id.* Where possible, every word must be given effect and meaning, and no part is to be held meaningless if it can be reconciled with the rest of the statute. *Id.* When certain items or words are specified or enumerated in a statute, then, by implication, other items or words not so specified or enumerated are excluded. *Id.*

In the present case, the Board enacted the Ordinance based on health and sanitary considerations. Specifically, the preamble of the Ordinance provides:

Whereas, it is in the best interest of the Citizens of the Town of Paragon to control the use, placement and occupancy of mobile homes in the Town of Paragon, and, WHEREAS, the rules and restrictions are necessary for Paragon, and, WHEREAS, the rules and restrictions are necessary for mobile homes to insure sanitary, efficient, and economically sound placement of such mobile homes, and WHEREAS, it is necessary that

there be certain rules and restrictions to insure that said mobile homes are connected and properly used between municipal utilities and to insure attractive and sanitary use of such mobile homes, and, WHEREAS, previous ordinances dealing with mobile homes are no longer current and it is necessary that they be updated ...

(Appellant's App. Tab 2). It is apparent that the Board relies largely on the Home Rule Act to support its contention that it has the inherent power to deny a license to an owner of a mobile home that is over five years old. In particular, the Home Rule Act states that a "unit" has all powers granted by statute and "all other powers necessary or desirable in the conduct of its affairs, even though not granted by statute." *See* I.C. § 36–1–2–23; Ind.Code §§ 36–1–3–1 to 36–1–3–9. Thus, the Board contends that since the Ordinance does not supplement or exclude the power of the Indiana Department of Health (Health Department) to regulate mobile home parks, the Ordinance is valid.

On the other hand, Lex argues that the Home Rule code specifically forbids home rule regulation of activities already covered by the State of Indiana departments and agencies. As previously mentioned, in this state, the regulation and licensing of mobile home parks is under the exclusive control of the Health Department. Thus, Lex maintains that sanitary and safety regulations of mobile home parks are promulgated by the Health Department and Home Rule ordinances may only operate to enforce the Health Department rules and regulations. Lex now contends that the Board's Ordinance exceeds its statutory authority by imposing a five-year limitation of the age of the mobile home that seek licensing.

However, we find Lex's contention without merit. Particularly, our review of the record shows that the Board's Ordinance simply seeks to insure that mobile homes located within the Town of Paragon are reasonably new and conform to the modern building standards of the mobile home industry. It is through the Ordinance that the Board is enforcing the Health Department's sanitary and safety regulations, not seeking to exceed its authority. Therefore, in interpreting the Home Rule statute as a whole and giving the words their common and ordinary meaning, we find that the enactment of the Ordinance is a reasonable use of the powers granted to the Board in the Home Rule Statute. *See Dvorak*, 702 N.E.2d at 1123. Consequently, we conclude that the Ordinance is not an ultra vires or unenforceable as a matter of law. *See id.*

### III. *Equal Privileges Clause*

Lex also asserts that the trial court erred in denying its Complaint for permanent injunction. In particular, Lex contends that the Ordinance violates the Equal Privileges Clause, Article 1, Section 23 of the Indiana Constitution. As a result, Lex maintains that the Ordinance is unconstitutional.

When we review a constitutional challenge to a municipal ordinance, we consider the ordinance to stand on the same footing as an act of the legislature. *Dvorak*, 702 N.E.2d at 1124; *Whitewater Valley Canoe v. Board of Franklin County Comm'rs*, 507 N.E.2d 1001, 1004 (Ind.Ct. App.1987), *trans. denied.* A municipal ordinance is cloaked with a presumption of constitutionality. *See id.* Therefore, upon appellate review, we place the burden upon the party challenging it to show unconstitutionality. *Id.; see State v. Costas*, 552 N.E.2d 459, 461 (Ind.1990) (discussing standard of review for constitutional challenge to a statute). Before an ordinance will be declared to be repugnant to the Constitution, its fatal constitutional defects

must be clearly apparent. *Id.* An ordinance is not unconstitutional simply because the court might consider it born of unwise, undesirable, or ineffectual policies. *Id.*

██ Article I, Section 23 of the Indiana Constitution provides: "[t]he General Assembly shall not grant to any citizen, or any class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens." Our supreme court has determined that equal privileges and immunities claims brought under Article I, Section 23 are to be analyzed separately from claims brought under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. *Id.; Collins v. Day,* 644 N.E.2d 72 (Ind.1994). A Section 23 analysis uses a single standard to determine whether a law violates the Indiana Constitution as opposed to a system of varying degrees of scrutiny depending on whether the classification involves a suspect class or a fundamental right, as with Fourteenth Amendment analysis. *Id.* That single standard consists of two requirements:

First, the disparate treatment accorded by the legislation must be reasonably related to inherent characteristics which distinguish the unequally treated classes. Second, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated.

*Id.*

██ Courts must employ this standard while giving "substantial deference to legislative discretion." *Id.* In *Collins,* our supreme court identified two kinds of Equal Privileges claims—those that seek to invalidate enactments which grant special privileges and those that seek to invalidate enactments which seek to impose special burdens. *Collins,* 644 N.E.2d at

79. Lex's claim falls into the latter category. Particularly, the burden of more restricted licensing for mobile homes and the exclusion of mobile homes that are five years old or older.

Here, Lex argues that the Ordinance fails both prongs of the *Collins* test. First, Lex asserts that the disparate treatment is not reasonably related to the distinguishing characteristic of the unequally treated class. In *Collins,* our supreme court stated that the class must be germane to the subject matter and the object to be attained. *Id.* at 78–9. In discussing this test, the court stated,

Where the legislature singles out one person or class of persons to receive a privilege or immunity not equally provided to others, such classification must be based upon distinctive, inherent characteristics which rationally distinguish the unequally treated class, and the disparate treatment accorded by the legislation must be reasonably related to such distinguishing characteristics. We believe that this requirement incorporates and satisfies the often expressed concerns that such legislative classifications be 'just,' 'reasonable,' 'substantial,' 'not artificial,' 'not capricious,' and 'not arbitrary.'

*Id.*

Lex contends that the Board has failed to offer any basis for the distinction between mobile homes younger than five years and mobile homes that are five years of age and older. Here, the disparate treatment accorded by the Ordinance is to permit only owners of mobile homes less than fives year old from obtaining a license. The issue, then, is whether there are inherent distinctions between mobile homes that are at least five years old that are reasonably connected to imposing the

burden of exclusion from obtaining a license.

Our review of the record clearly shows that the first prong of the *Collins* test has been satisfied. Specifically, the record shows that the Board enacted the Ordinance in order to ensure sanitary, efficient and economical placement of the mobile homes in the town of Paragon. Further, the Ordinance also seeks to ensure that the mobile homes are connected and properly used between municipal utilities and to insure attractive and sanitary use of the mobile homes. Therefore, we find that the Board's reasons for enacting the Ordinance are reasonably related to inherent differences between mobile homes that are five years old and older and those that are less than five years old. *Dvorak,* 702 N.E.2d at 1124.

Nevertheless, we must also apply the second prong of the *Collins* test, to ensure that the special burden is uniformly applicable and equally imposed on all persons similarly situated. Our review of the record shows that the Ordinance satisfies this prong of this test. In particular, the record is devoid of evidence where Lex shows that the Board granted a license to an owner of a mobile home five years old or older. On the contrary, the record reveals that the Board previously denied mobile home permits for mobile homes due to the age of the mobile home, *i.e.* over five years old. Moreover, the record discloses that the Board does not contend that the grant of privilege or immunity is not equally applicable to and available for all persons who satisfy the requirement. In *Collins,* our supreme court stated that one who challenges legislation under the privileges and immunities clause of the Indiana Constitution has the burden "to negate every conceivable basis which might have supported the classification." *Collins,* 644 N.E.2d at 80 (quoting *Johnson v. St. Vin-*cent Hospital, Inc.,* 273 Ind. 374, 404 N.E.2d 585, 597 (1980)). We find that Lex has failed to meet this burden. Accordingly, we conclude that the Ordinance does not violate Article 1, Section 23 of the Indiana Constitution.

## CONCLUSION

Based on the foregoing, we conclude that the trial court did not abuse its discretion in denying Lex's Complaint for permanent injunction. *See Schlehuser,* 674 N.E.2d at 1012.

Affirmed.

DARDEN, J., and BAILEY, J., concur.